This is a child custody modification case.
When the parties were divorced in January 1982, the final judgment of the Circuit Court of Talladega County approved an agreement of the parties whereby the mother was granted custody of their only child, Adam. In June 1983, custody was changed to the father by an agreement which was ratified and confirmed by the trial court. The wife filed the present proceedings *Page 1278 
in early 1985, seeking the child's custody because of an alleged material change in the circumstances. After a contested trial, a judgment was rendered which found that there had been a material change in the mother's circumstances and, no evidence having been introduced that the mother was an unfit person to have Adam's custody, it was ordered that the parents alternate as to the boy's custody each six months. The father appealed from that judgment and ably argues the adequacy of the evidence to support the custody modification judgment. The mother has not favored this court with a brief.
We detail the pertinent evidence upon the issue in question.
At the time the father was granted custody, the mother was employed by the Talladega Sheriff's Department, and she lived in the City of Talladega. The child was kept by the maternal grandmother while the mother worked; but, after serious surgery was performed upon the maternal grandfather in May 1983, the grandmother could not look after both the grandson and her ill husband, who was not able to go back to his employment until July 1983. The mother had no one to keep the child while she was on her job and, by agreement of the parties, the custody change to the father was made in June 1983. The son was almost two years of age at that time.
The mother filed for bankruptcy two months before she signed the 1983 custody agreement. After the father obtained Adam's custody, the mother lost her employment and, when her unemployment compensation benefits expired, she moved back home with her parents because she could not find another job.
In May 1984, the mother married Mr. Ivey, who is also from the Talladega area. For several months they lived near Talladega, but they moved to Ft. Walton, Florida, around May 1, 1985. Mr. Ivey has permanent office employment with a construction business as a project manager, where he earns about $26,000 per year, not including fringe benefits. They rent a very adequate home in Ft. Walton. The mother does not work and has no plans to seek employment. Consequently, she is at home all day and is available to provide personal, full-time care for Adam, along with the seven-year-old daughter of her new husband. Ft. Walton is a five-hour drive from Talladega for the Iveys, but the mother missed few, if any, every-other-weekend visits with her son. When her visitations end, Adam objects to going home to his father. The boy and Mr. Ivey have a good relationship. Mr. Ivey is willing to support Adam while he is in his wife's custody, at which time Adam will become a dependent insured by the stepfather's health insurance policy.
When the father first had custody, he and the boy lived with the paternal grandmother in Talladega. The child has a close relationship with the paternal grandmother. Because the father and that grandmother were each employed, the child attended a nursery school from about 8:00 A.M. until around 4:30 P.M. Adam did well in that school and established friendships with the other children. At the time of the hearing in May 1985, the father's employment was from 6:30 A.M. until 4:30 or 5:30 P.M. on Monday through Friday of each week. He earns about $16,000 yearly. The father recently remarried and has an adequate home for Adam. This is his present wife's first marriage. She is an elementary school teacher and assists Adam in his intellectual growth. The boy is a dependent under both the father's and stepmother's health policies.
No question was made by the evidence as to either parent's fitness to have custody of the boy, and no issue was raised as to the integrity, character or habits of either new spouse. No adverse evidence was presented as to the manner in which the father administered to the needs of the child or as to Adam's environment while he was in his father's custody.
When the trial court hears the evidence ore tenus in a child custody modification case, as it did here, we presume that the trial court was correct and reverse only for an abuse of discretion or where *Page 1279 
the judgment is so unsupported by the evidence as to be palpably wrong. Matter of Young, 456 So.2d 823 (Ala.Civ.App. 1984.) When a noncustodial parent attempts to modify a judgment which granted custody to the other parent, the noncustodial parent bears the affirmative burden of proving that a change of custody would materially promote the best interests of the child. Ex parte McClendon, 455 So. 863 (Ala. 1984); Clayton v.Pair, 457 So.2d 420 (Ala.Civ.App. 1984). The petitioning parent must show that the positive good brought about by modifying the judgment more than offsets the inherently disruptive effect of uprooting the child. McClendon, supra; Clayton, supra. Where a child custody award has been made to the father and the mother later filed modification proceedings, it is insufficient for the mother to show that she has remarried, reformed her lifestyle and improved her financial condition; but she bears the burden of reasonably satisfying the trial court from the evidence and reasonable inferences therefrom that the child's best interest will be promoted by a change in custody.McClendon, supra.
Here, there was evidence of a favorable material change in the mother's circumstances. She worked and had no one to look after Adam for a period of time after surgery was performed upon the maternal grandfather. Custody was changed to the father on that account. That agreed modification was for the benefit of the child and did not occur because of the mother's fault or unfitness. Both of the parties have fine new spouses. The mother is presently able to administer to Adam's needs on a full-time basis in an adequate home where he will be loved and cared for. While both parties are fit parents and either would provide him with a nurturing, loving home, the mother has shown that, since she agreed to give up the custody of Adam, her circumstances have improved and that she is able to provide for her son, not only in the same or equal manner that the father and stepmother have been providing for him but in an improved manner, since Adam must attend a nursery school while the father and his wife both work and since the mother is now able to devote her time and talents to the rearing of Adam on a full-time basis. Such constitutes adequate proof that Adam's interests are promoted by the change, i.e., such evidence was sufficient to overcome the disruptive effect caused by uprooting the child.
Adam's custody is now split equally between his parents, and he will have the opportunity of again intimately knowing both of them. While the present custody arrangement will probably need altering when Adam becomes of mandatory school age, we do not deem that the present custody arrangement constitutes an abuse of the trial court's discretion under the facts and circumstances of this particular case.
In short, the mother met the evidentiary requirements as imposed by McClendon, supra. Accordingly, any change of custody rested in the discretion of the trial court. We find no abuse thereof and affirm.
The foregoing opinion was prepared by retired Circuit Judge EDWARD N. SCRUGGS, serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code of Alabama 1975, and this opinion is hereby adopted as that of this court.
AFFIRMED.
All the Judges concur.