[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1097 
Anna K. Kaiser, the wife, appeals from a judgment of the Baldwin Circuit Court divorcing her from Kenneth J. Kaiser, Jr., the husband. The wife argues that the trial court erred by awarding primary physical custody of the parties' three children to the husband and by refusing to require the husband to produce for her review a file prepared by the husband's private investigator. The husband cross-appeals, arguing that the trial court erred by granting the wife a portion of his retirement accounts as part of its property division and by holding him in contempt of court and sanctioning him for spoliation of evidence.
The parties were married in November 1990, and they subsequently had three children, two boys and one girl. In September 2000, the wife filed a complaint for divorce in the Baldwin Circuit Court, requesting, in pertinent part, primary physical custody of the parties' children.[1]
The wife also filed a motion for temporary custody of the parties' children, which the trial court granted pending a final hearing on her complaint for divorce.
A few weeks after the wife filed her complaint, the wife's employer, a law firm where the wife worked as a secretary, filed a motion alleging that the husband, who worked for Gulf Telephone Company, had *Page 1098 
improperly accessed its telephone lines and had made audiotapes of potentially privileged or confidential communications relating to the firm's clients. The wife's employer requested, in pertinent part, that the trial court order the husband to produce the audiotapes to the firm or to the court so that it could be established that no privileged or confidential information had been recorded. The husband denied the allegations of the wife's employer.
The trial court held a hearing on the employer's motion at which the father apparently testified that he had made audiotapes of telephone conversations in which his wife had participated from their home; he denied improperly accessing the law firm's telephone lines. The trial court ordered the husband to produce all of the audiotapes in his possession for review. Thereafter, the husband produced four audiotapes and, at his wife's suggestion he says, burned several additional tapes. In November 2000, the wife filed a motion alleging that the husband had destroyed audiotapes in violation of the trial court's order and requesting that the trial court hold the husband in contempt of court for, among other things, spoliation of evidence, and that it require him to pay $500 for the wife's attorney fees.
In December 2000, the wife served written interrogatories on the husband. Interrogatory number 32 read as follows:
 "32. Have you conducted any surveillance of your spouse within the past five (5) years, or has any person or persons conducted such surveillance on your behalf? If so:
 "A. State what surveillance you have conducted, including the date, time and place of such surveillance and what you observed.
 "B. If some other person or persons conducted such surveillance on your behalf, state the name and address of such person or persons, the date, time and place of such surveillance and state what was related to you as to what was observed?"
Although the record does not contain the husband's original answer to interrogatory number 32, the husband denied in his deposition that he had employed an investigator to conduct surveillance on the wife. A few days before trial, however, the husband's counsel filed an amended answer to interrogatory number 32, stating, in pertinent part:
 "The [husband's] father, early in these proceedings, contacted Baldwin Legal Investigations and they conducted certain investigations. This was paid for by the [husband's] father and no such report or photographs were ever received. The [husband] does not intend to use Baldwin Legal Investigative Services in any way. Counsel for the [husband] made known in the deposition that no investigative services were being used."
The court held a trial on the merits in June 2001. At trial, the husband admitted that he had actually requested that Baldwin Legal Investigations conduct surveillance on the wife in the spring of 2001 but that he had received funds to pay for the investigation from his father. He also stated that he had lied during his deposition about the surveillance investigation because he did not want the wife's counsel to find out about the investigation. The husband's legal counsel denied that he had any knowledge of the investigation.
A few days after trial, the husband again amended his answer to interrogatory number 32. In his second amended answer, the husband retracted his first amended answer and stated that his counsel had filed the first amended answer without consulting him, that his counsel had provided him with the name of an investigator *Page 1099 
at Baldwin Legal Investigations in the spring of 2001, that the husband had contacted the investigator, and that his counsel had forgotten about their conversation until the husband had reminded him of it. The husband also asserted that the results of the investigation were work product obtained in preparation for his defense and that the investigator's file would be discoverable only if the husband intended to use the information in the court proceedings.
Subsequently, in July 2001, the wife filed a second motion for contempt and for sanctions. The wife alleged that fraud had been perpetrated on the trial court regarding the surveillance investigation. She requested that the court grant sanctions and award costs based upon the deceit as to the investigation and based upon the earlier destruction of audiotapes.
On July 31, 2001, the trial court entered a judgment in which it divorced the parties, awarded alimony to the wife, divided the marital assets of the parties, and decided the parties' custody and visitation rights relating to their three children. As to the latter issue, the trial court awarded the husband primary physical custody of the children and awarded the wife the right to visitation with the children in accordance with the trial court's standard visitation schedule and at such other times as the parties might agree.
On August 20, 2001, the trial court held a hearing on the wife's November 2000 motion to hold the husband in contempt for his destruction of the audiotapes and on her July 2001 motion for sanctions for the deceit regarding the surveillance of the wife. Because the investigator was not present at the hearing, the trial court continued the hearing as to the wife's motion relating to the deceit regarding the surveillance of the wife, but it proceeded to hear testimony regarding the destruction of the audiotapes. Thereafter, the trial court entered an order holding the husband in criminal contempt for spoliation of evidence and reserving "the issue of sanctions."
On August 30, 2001, the wife filed a timely motion pursuant to Rule 59, Ala.R.Civ.P., requesting that the trial court alter its divorce judgment to award her primary physical custody of the children, that it grant her a new trial because of the husband's destruction of the audiotapes, and that it grant her such other relief to which she might be entitled. The trial court subsequently held a hearing on all outstanding motions and, on November 7, 2001, entered an order stating, in part:
 "This case has been one of the most difficult, if not the most difficult, for this Court in over four years of hearing domestic relations cases. The parties have shown complete distrust and hatred of each other.
". . . .
 "The Court's findings in the original decree were arrived at only after painstaking analysis. It was not easy for this Court to decide custody of these children. After all, the children were the only ones that had not caused the total breakdown of this marriage. Both sides were clearly at fault. (If not legally, certainly in the irretrievable breakdown and incompatibility that had been caused in their unwillingness to try to make a marriage work.)"
Although the trial court found that the husband had lied regarding his hiring of Baldwin Legal Investigations, it concluded that the information gathered in that investigation was protected work product:
 "[T]hat information would be privileged and [the wife] would not be entitled to the information gathered by the investigator in anticipation of litigation. Further, the investigator left his file with *Page 1100 
the Court for an in camera inspection and the Court finds that there is nothing in the investigation records to indicate that had the information been known to the Court prior to the trial or during the trial that this Court's findings would have been any different. Therefore, the Court as sanctions for [the] contemptuous actions of the [husband] does assess $2,000.00 . . . for reimbursement of the [wife's] attorney's fees for having to bring this contempt action. A copy of the investigator's report and file is made a Court's exhibit if this matter is appealed and is held under seal to be available to the appellate court for review."
The trial court also determined that the husband had destroyed audiotapes in violation of its order that he produce the audiotapes for review. The trial court concluded:
 "However, nothing has been presented to this Court to indicate that there was any information on those tapes that would have altered the findings by this Court. In fact, the [husband] admitted that the tapes did not include any information that was detrimental to the [wife]. Nevertheless, the [husband] should be sanctioned for his deliberate and intentional violation of this Court's order in destroying the tapes. Therefore, it is ordered that he pay $2,500.00 to the [wife] for the expenses incurred for having to bring this action as well as prior court hearings relating to the spoliation of the exhibits. Further, the [husband] is ORDERED into the custody of the Baldwin County Sheriff for a period of two (2) days."
Further, the trial court stated that it was amending its judgment "relating to visitation . . . so that the children shall spend [with the wife] every Tuesday and Thursday of each week for the time they are released from school and/or daycare until school the next morning."
On December 5, 2001, the husband filed a postjudgment motion in which he requested that the trial court vacate its order holding him in contempt for destroying the audiotapes and for his deceit regarding the hiring of Baldwin Legal Investigations. The trial court denied the husband's postjudgment motion stating, in pertinent part:
 "[The husband] gave intentional[ly] false testimony in his deposition, answers to interrogatories and at trial. Further, he destroyed tapes after the Court and his lawyer instructed [him] to turn over the tapes. [The husband] is not found in contempt for possible violation of any wire[tapping] laws but is in contempt for his direct and intentional violation of the Court's order to turn over those tapes as well as his intentional[ly] false and misleading testimony. This caused delay and expense to both the Court and to [the] opposing party."
The wife appeals; the husband cross-appeals.
 The Wife's Appeal
The wife argues on appeal that the trial court erred by granting the husband primary physical custody of the children because, she says, it was in the children's best interests for her to have primary physical custody. Specifically, the wife argues that the trial court erred because she had been the primary caregiver of the children and, according to the wife, the husband would require assistance from family members if he had custody of the children.
The trial court did not make specific findings of fact regarding the basis for its custody determination. As we have held, "[w]hen a trial court does not make specific findings of fact concerning an issue, an appellate court will assume that *Page 1101 
the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous." McGough v. McGough,710 So.2d 452, 453 (Ala.Civ.App. 1997). Also, where, as in this case, a trial court's custody determination is based upon ore tenus evidence, that determination is presumed to be correct and will not be reversed on appeal unless "`the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown.'" Bryant v. Bryant, 739 So.2d 53, 55 (Ala.Civ.App. 1999) (quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App. 1993)). The ore tenus rule is based, in part, on the unique position of the trial court to personally observe the parties and witnesses and to hear the evidence. See Williams v. Williams, 402 So.2d 1029, 1032
(Ala.Civ.App. 1981).
This is an action between two fit parents seeking an initial award of custody. "The paramount consideration for a court in a child custody case is the best interests and welfare of the child[ren]." Price v. Price,440 So.2d 1110, 1110 (Ala.Civ.App. 1983).[2]
In considering the best interests and welfare of a child, the court must consider the individual facts of each case:
 "The sex and age of the children are indeed very important considerations; however, the court must go beyond these to consider the characteristics and needs of each child, including their emotional, social, moral, material and educational needs; the respective home environments offered by the parties; the characteristics of those seeking custody, including age, character, stability, mental and physical health; the capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the children; the interpersonal relationship between each child and each parent; the interpersonal relationship between the children; the effect on the child of disrupting or continuing an existing custodial status; the preference of each child, if the child is of sufficient age and maturity; the report and recommendation of any expert witnesses or other independent investigator; available alternatives; and any other relevant matter the evidence may disclose."
Ex parte Devine, 398 So.2d 686, 696-97 (Ala. 1981).
Consistent with the description of relevant factors listed in Ex parteDevine, the wife emphasizes that who the children's "primary caregiver" has been is an important factor for the trial court to consider in making a custody decision. We agree that who the primary caregiver of a child has been is an important factor. Indeed, it may even be dispositive in an appropriate case. See Tims v. Tims, 519 So.2d 558 (Ala.Civ.App. 1987) (awarding custody to a parent based largely on the parent's role as the primary caregiver); West v. West, 469 So.2d 610 (Ala.Civ.App. 1984) (to like effect). However, in keeping with the holding in Ex parte Devine, this is not the only factor that the trial court was required to consider in making its custody determination. *Page 1102 
There is evidence in the present case that would support a finding by the trial court that the wife tired of farm life and gave priority to her social life over her family. It would also support findings that the wife's relationship with a particular male "friend" substantially contributed to the parties' divorce and that, as between the wife and the husband, the husband had acted more responsibly towards the children and given greater priority to the interests of the family. The evidence would support a finding that the father participated substantially in the care of the children throughout the parties' marriage, and numerous witnesses testified that he had a close relationship with the children. Further, the evidence would support findings that the husband would directly exercise his responsibility for the children's care if the trial court awarded him custody; that he would continue to raise them in the family home, which was located near the father's parents' farm; and that he would continue their education at the church school that the children had been attending. Further, the father has family to assist him with the children's care, when necessary, and the wife has none.
We have carefully reviewed the record, and, given the sensitive nature of some of the evidence, we do not believe that a more detailed discussion of the facts supporting the trial court's custody award is warranted. We understand the trial court's lament that this was a difficult case. We are also mindful that, although the trial court awarded primary physical custody to the husband, it awarded the wife visitation two nights out of every week, in addition to visitation under its standard-visitation schedule. Under the totality of the evidence presented, and given the nature and extent of the visitation arrangement ultimately ordered by the court, we cannot conclude that the trial court's judgment awarding the husband primary physical custody of the parties' children was an abuse of discretion.
The wife next argues that the husband's deceit regarding his hiring of Baldwin Legal Investigations (for which he was held in contempt) constituted a waiver of the work-product privilege. The wife contends that the trial court's refusal to allow the wife to review the investigator's file constituted reversible error and grounds for a new trial.[3] At the hearings regarding the husband's false testimony, the trial court stated that it had effectively addressed the husband's deceit by finding him in contempt; the husband has not cross-appealed from that contempt determination. The court also concluded that the husband had not waived the work-product privilege because the husband had no obligation to assert the privilege until someone was actually attempting to require disclosure of the alleged work product. According to the trial court, the husband properly asserted the work-product privilege when the court ordered that the investigator's file be produced for review. In addition, after the trial court reviewed the investigator's file in camera, it stated that the file contained nothing that would have changed its judgment.
We need not address the merits of the wife's argument regarding whether the husband waived any work-product privilege. We cannot reverse a trial court's judgment or grant a new trial unless it "appear[s] that the error complained of has probably injuriously affected substantial *Page 1103 
rights of the parties." Rule 45, Ala.R.App.P.; see also Rule 61, Ala.R.Civ.P. The husband offered no evidence from the investigator's file, and there was substantial evidence regarding the wife's relationship with her "friend" that originated from other sources and that predated the investigation. Therefore, even if we agreed with the wife's argument regarding waiver of the work-product privilege, we would not, in this case, reverse the trial court's judgment or conclude that a new trial should have been granted on that basis.
Based on the foregoing, the judgment of the trial court is due to be affirmed as to the issues raised by the wife.
 The Husband's Cross-Appeal
Turning now to the husband's cross-appeal, we first address the husband's argument that the trial court erred by awarding the wife a portion of his 401k and ESOP retirement accounts because the parties had not been married for 10 years when the wife filed her complaint for divorce. It was undisputed that the wife's complaint for divorce was filed before the parties had been married for a period of 10 years. As this court held in Smith v. Smith, 836 So.2d 893 (Ala.Civ.App. 2002), the appropriate date for measuring whether the parties have been married for 10 years for purposes of the division of retirement benefits under Ala. Code 1975, § 30-2-51(b), is the date of the filing of the complaint for divorce. Smith, 836 So.2d at 900. Accordingly, the trial court erred by awarding the wife a portion of the husband's 401k and ESOP retirement benefits.
The husband next argues that the trial court erred by holding him in contempt of court for destroying the audiotapes that the trial court had ordered him to produce because, he says, the tapes were inadmissible as evidence under 18 U.S.C. § 2511 and 2515. He also argues that the wife did not properly initiate her contempt action for spoliation of evidence under Rule 70A(c)(1), Ala.R.Civ.P., and that the trial court exceeded its authority under Ala. Code 1975, § 12-11-30(5), by imposing a fine exceeding $100 for criminal contempt.
At the August 20, 2001, hearing regarding the wife's motion to hold the husband in contempt for destruction of the audiotapes, the trial court stated, in pertinent part, "[t]he issue before this Court is whether [the husband] violated an order of this Court by burning the tapes after he was instructed by his lawyer that he was to turn them all over." At the conclusion of the hearing, the trial court stated, in pertinent part:
 "As to the contempt as to the spoliation of evidence of the burning of the tapes, . . . I find that you [the husband] are in contempt of this Court for your willful disobedience of the Court's orders. I am going to set the sanctions down on that for . . . the day in which I hear [the wife's motion for] contempt on the interference with visitation."
As noted above, in its postjudgment order, the trial court ordered the husband to "pay $2,500.00 to the [wife] for the expenses incurred for having to bring this action as well as prior court hearings relating to the spoliation of the exhibits.[4] Further, the [husband] is ORDERED into the custody of the Baldwin County Sheriff for a period of two (2) days."
One of the federal statutes cited by the husband provides criminal penalties *Page 1104 
for illegal wiretapping. See 18 U.S.C. § 2511(1). The other federal statute cited by the husband states that the results of an illegal wiretap generally may not be used as evidence at "any trial." See18 U.S.C. § 2515. However, the husband has offered no authority that those statutes prevent the disclosure of the contents of an illegal wiretap to the person who was the object of the wiretap. More importantly, even if the destroyed evidence had been inadmissible, the husband had an obligation to comply with the trial court's order by, at a minimum, not destroying the audiotapes and by presenting them to the trial court for an in camera review. See generally, 18 U.S.C. § 2520(d)(1) ("good faith reliance on . . . a court . . . order . . . is a complete defense against any civil or criminal action brought under this chapter").
With respect to the husband's argument that the wife's contempt proceeding had not been properly initiated under Rule 70A(c)(1), we note that the wife filed a motion requesting that the trial court hold the husband in contempt for spoliation of evidence in November 2000, shortly after the husband destroyed the audiotapes, and that she "renewed" that motion in July 2001 in conjunction with her request that the trial court sanction the husband for his deceit regarding the hiring of Baldwin Legal Investigations. The husband did not argue before the trial court that the contempt proceeding had not been properly initiated; instead, he argued that federal law prohibited the disclosure of the destroyed tapes. We therefore will not hold the trial court in error in this regard. SeeSmith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala. 1988).
The husband also argues that the trial court exceeded its authority under Ala. Code 1975, § 12-11-30(5), by imposing a fine exceeding $100 for criminal contempt.[5] The trial court's order to pay $2,500 for the wife's attorney fees incurred in connection with the criminal-contempt proceedings and related proceedings regarding spoliation of evidence, however, is not per se a fine. See State ex rel. Payne v. Empire LifeIns. Co., 351 So.2d 538 (Ala. 1977). Nonetheless, it is true that our Supreme Court held in Ex parte Collins, 860 So.2d 1259 (Ala. 2003), and in State ex rel. Payne v. Empire Life Insurance Co., that a trial court generally does not have the discretion to award attorney fees in a criminal-contempt action. The husband, however, has not cited those cases, nor made the argument on appeal that the trial court erred by ordering him to reimburse the wife for her legal expenses. Therefore, this court will not hold the trial court in error for doing so. SeeChambers v. Advanced Processing Sys., 853 So.2d 984 (Ala.Civ.App. 2002);Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala. 1988); Rule 28(a)(10), Ala.R.App.P. *Page 1105 
 Conclusion
The trial court's judgment as it relates to the division of the parties' marital assets is reversed, and the cause is remanded for the entry of a judgment consistent with this opinion. Otherwise, the trial court's judgment is affirmed.
APPEAL — AFFIRMED.
CROSS-APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
[1] In December 2000, the husband filed a motion with the trial court alleging, in pertinent part, that he had filed a complaint for divorce in the trial court on September 6, 2000, and that the wife's complaint for divorce had not been filed until September 22, 2000. The husband requested that the cases be "consolidated." Subsequently, the trial court issued an order consolidating the cases.
[2] In Ex parte McLendon, 455 So.2d 863 (Ala. 1984), our Supreme Court articulated a presumption that is applicable when there has been a prior judicial decree awarding physical custody to one parent (or a nonparent), or a voluntary relinquishment or forfeiture of the physical custody of a child, and the same has been acted upon to the manifest interest and welfare of the child. 455 So.2d at 865-66. The "McLendon
presumption" is not applicable in the present case.
[3] The wife did not argue at trial, and has not attempted to argue on appeal, that the trial court erred in concluding that the investigator's report constituted work product under the facts of this case; our decision should not be construed as either approving or disapproving of the trial court's conclusion.
[4] As previously noted, the trial court also found the husband in contempt for his deceit regarding surveillance of the wife and required him to pay the wife $2,000 for her legal expenses regarding that issue. The husband has not appealed from that aspect of the trial court's judgment.
[5] Rule 70A(a)(2), Ala.R.Civ.P., defines "criminal" and "civil" contempt, respectively, as follows:
"(C) `Criminal contempt' means either:
 "(i) Misconduct of any person that obstructs the administration of justice and that is committed either in the court's presence or so near thereto as to interrupt, disturb, or hinder its proceedings; or
 "(ii) Willful disobedience or resistance of any person to a court's lawful writ, subpoena, process, order, rule, or command, where the dominant purpose of the finding of contempt is to punish the contemnor.
 "(D) `Civil contempt' means willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with."
The court's finding of contempt in the present case falls within the definition of criminal contempt. See State ex rel. Payne v. Empire LifeIns. Co., 351 So.2d 538 (Ala. 1977).