Christina Headrick ("the wife") appeals from a judgment of the Marshall Circuit Court that, among other things, divorced her from Teddy Headrick ("the husband") and awarded to the parties joint legal and physical custody of the parties' minor child. We reverse and remand.
The parties married in 1997 and have one child, a son, who was five years old at the time of the trial in 2004. The wife also had a 12-year-old son from a prior marriage who lived with the parties.[1] Discipline of the stepson and the stepson's behavior and academic progress were frequent sources of contention between the parties.
During their marriage, the parties lived in Marshall County between Grant and Scottsboro. The husband continues to live in the marital residence. The husband's parents and several members of his extended family live in the vicinity of the marital residence. The husband is employed at a restaurant owned by his parents. His employment and residence have been stable for many years.
After the parties separated, the wife moved to Hazel Green, Alabama, where she lives a few houses away from her parents. Hazel Green is in Madison County and is located approximately 40 to 50 miles from Grant. During much of the marriage, the wife was a "stay-at-home mom," but she also worked at times in a manufacturing job. At the time of the trial, the wife was self-employed as a house cleaner.
The wife initiated the present divorce action by filing a petition for protection from abuse against the husband, in response to which the trial court entered an ex parte protection order against the husband. The husband thereafter filed an answer to the wife's petition and a counterclaim *Page 612 
for a divorce. The parties reached a pendente lite agreement that was incorporated into a pendente lite order. That agreement provided, among other things, that the parties would maintain joint physical and legal custody of the child. The child resided with the wife on Sunday and Monday nights of each week and with the husband from Tuesday afternoon until 3:00 p.m. on Sunday of each week. The husband would arrange to take the child to a church preschool on Tuesdays, Wednesdays, and Thursdays. This arrangement continued for a period of 13 months — from the entry of the pendente lite order until the trial.
After a trial at which evidence was received ore tenus, the trial court entered a judgment of divorce on March 18, 2004, that, among other things, made findings of fact and awarded custody as follows:[2]
 "3. This case presented a sad situation. Both parties are requesting full custody of the child. Both parents have problems with their abilities to properly parent. The Court finds there was domestic violence that took place where [the husband] was physically abusive to [the wife] and her two children [the stepsons], and also that [the wife] was physically abusive to [the husband], but the Court finds that neither [the husband] nor [the wife] have been physically or mentally abusive toward [the minor child], and neither is a threat to be in the future. [The wife] has a problem with abusing prescription drugs and has been on methadone for the last 5 years in order to keep from abusing prescription drugs. [The husband] has known this and allowed [the wife] to keep the child. [The wife] has known of [the husband's] temper, but allowed the child to stay with him although her family was available to keep the child. Both parties admit to having smoked marijuana in the past. Both claim that they are the `better' parent to have custody. The parties have not been able to agree on and have been inconsistent with their punishment of the child. The Court had the opportunity to observe the demeanor of the parties as they testified and is reasonably satisfied that both parties were less than candid in portions of their testimony. This is a case where the `pot calls the kettle black.' Due to the fact that there is no better alternative, and the fact that the evidence shows one parent is no better than the other, both parties shall exercise joint legal and physical custody of the minor child pursuant to the Pendente Lite Order in this case except Defendant [the husband] shall get the child on Monday night rather than Plaintiff having to come here Tuesday morning. The Standard Custody and Visitation Order . . . shall be applied only to the extent of (a) holiday visitation, (b) phone visitation, and (c) with respect to the conduct of the parties as set out therein until the child starts first grade. When the child starts . . . the first grade in elementary school, [the wife] shall have primary custody during even numbered years and [the husband] during odd numbered years. The `year' shall begin with the beginning of school in the fall each year. When one party has primary custody after the child starts to school in the first grade, the other party shall have visitation in accordance with the Standard Custody and Visitation Order. The primary custodian shall determine where the child attends school each *Page 613 
year. The Court has considered all the factors set out in § 30-3-152, Code of Alabama, 1975, in making this determination."
The wife appeals, contending that the trial court erred in awarding joint custody of the parties' child to the parties because there is evidence that the husband had physically abused the wife and the stepsons. She also contends that the award of joint custody was not in the best interest of the child because, she says, it requires him to change his residence and school every year.[3]
The paramount consideration, or polestar, for a court in a child-custody case is the welfare and best interests of the child. Kaiser v. Kaiser, 868 So.2d 1095 (Ala.Civ.App. 2003). We also note the presumption of correctness accorded to a trial court's judgment:
 "When this Court reviews a trial court's child-custody determination that was based upon evidence presented ore tenus, we presume the trial court's decision is correct: `"A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong. . . .'" Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), quoting Phillips v. Phillips, 622 So.2d 410, 412
(Ala.Civ.App. 1993) (citations omitted). This presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. `In child custody cases especially, the perception of an attentive trial judge is of great importance.' Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App. 1981)."
Ex parte Fann, 810 So.2d 631, 633 (Ala. 2001).
 "In a divorce action between two fit parents, where there has been no prior custody determination and neither parent has voluntarily relinquished custody of the child, the `best interest' of the child is controlling; the parties stand on `equal footing' and no presumption inures to either parent. `"`The trial court's overriding consideration is the children's best interest and welfare.'"' Smith v. Smith, 727 So.2d 113, 114 (Ala.Civ.App. 1998) (quoting Collier v. Collier, 698 So.2d 150, 151 (Ala.Civ.App. 1997), quoting in turn Graham v. Graham, 640 So.2d 963, 964 (Ala.Civ.App. 1994))."
Fell v. Fell, 869 So.2d 486, 494 (Ala.Civ.App. 2003). An exception to the equal-footing principle concerns cases where domestic violence and abuse have occurred. In such cases, the Custody and Domestic or Family Abuse Act, Ala. Code 1975, §30-3-130 et seq. ("the Act"), creates a rebuttable presumption against granting custody to a perpetrator of domestic violence or abuse. Section 30-3-131, Ala. Code 1975, provides:
 "In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with *Page 614 
the perpetrator of domestic or family violence. Notwithstanding the provisions regarding rebuttable presumption, the judge must also take into account what, if any, impact the domestic violence had on the child."
Section 30-3-133, Ala. Code 1975, creates a similar rebuttable presumption that a minor child should reside with the parent who is not the perpetrator of domestic violence.
In Ex parte Fann, our Supreme Court held that the Act does not require a trial court to make a specific finding as to whether domestic violence has in fact occurred and that it does not require the trial court to state the reasons and findings supporting a conclusion that a parent has rebutted a presumption against custody. Ex parte Fann, 810 So.2d at 638-39. See alsoFell v. Fell, 869 So.2d at 494.
The judgment in this case did not expressly reference the Act, and it did not expressly state that the husband had rebutted the presumption of the Act against his having custody.[4] The trial court did, however, make specific findings that bothparties had committed domestic violence, that neither party
had abused the child, that neither party was a threat to abuse the child, that the wife has a problem with prescription drugs, and that neither party was a better parent than the other. All of those findings tend to rebut the presumption of the Act against the husband having custody. We have reviewed the record and conclude that the trial court's findings of fact are supported by substantial evidence. Under the ore tenus rule, the trial court's findings are accorded a presumption of correctness and the appellate courts are not to reweigh the evidence. Ex parteBryowsky, 676 So.2d 1322, 1324 (Ala. 1996).
We therefore cannot conclude, based on the totality of the evidence, that the trial court was plainly and palpably wrong in implicitly finding that the presumptions of the Act had been rebutted by the husband, or that the Act prevented the court from awarding to the parties joint legal and physical custody of the minor child. See, e.g., Fell, 869 So.2d at 495; Smith v.Smith, 887 So.2d 257, 263 (Ala.Civ.App. 2003); McClelland v.McClelland, 841 So.2d 1264, 1268-69 (Ala.Civ.App. 2002).
We turn now to the wife's argument that the trial court erred in requiring the child's primary physical custody to change every year after the child enters the first grade. The alternating primary-custody arrangement was obviously an attempt by the trial court to make the best of a less than ideal situation and to give the child the advantages of continued contact with both parents. We conclude, however, that this decision constitutes reversible error because the alternation of residence and primary physical custody guarantees a recurring, yearly disruption in this young child's life for which we find no justification in the record.[5] *Page 615 
In Ex parte McLendon, 455 So.2d 863 (Ala. 1984), our Supreme Court recognized the need for continuity in a child's life. Under the Supreme Court's holding, when a physical-custody determination has been "`acted upon by [the custodian] to the manifest interest and welfare of the child,'" 455 So.2d at 865
(quoting Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445
(1947)), a change of primary physical custody thereafter should be based only upon changes in circumstances that are material and that lead the court to conclude that the "positive good" to be achieved by the change will more than offset the "`disruptive effect caused by uprooting the child.'" 455 So.2d at 865 (quotingWood v. Wood, 333 So.2d 826, 828 (Ala.Civ.App. 1976)). Seealso, e.g., Hughston v. Ivey, 479 So.2d 1277 (Ala.Civ.App. 1985) (interpreting and applying Ex parte McLendon). The principle underlying the so-called McLendon presumption is that, as a matter of law and policy, frequent disruptions of custody generally are not in a child's best interest. The Supreme Court recognized the basic truth that a child needs "`the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood. . . . Frequent disruptions are to be condemned.'" Ex parte McLendon, 455 So.2d at 865-66 (quotingWood, 333 So.2d at 828).
We also note that our law recognizes that "a change in the custodial parent's residence is a factor to be considered when determining the outcome of a modification petition," Moore v.Moore, 585 So.2d 66, 68 (Ala.Civ.App. 1991), This authority is not directly applicable to this case, but it would support a conclusion that repeated changes in custody resulting in yearly changes to a child's primary residence and community would tend to be contrary to policy that undergirds much of our custodial law.
We conclude that the annual alternation of primary custody in the manner prescribed by the trial court in the present case is contrary to the above-stated principles. The bonds that will naturally tend to form between the child and his primary physical custodian will largely be torn each year and the child's home environment and routine will be disrupted. Moreover, this is not a case in which the husband and the wife live in the same community. In fact, the parties live in different counties and in different school districts. Thus, as the primary custodian changes annually, the child will be forced to change his residence, school, church, activities, and friends.
Because of the long intervals between changes in the primary custodian, and the distance between the parties' current residences, the alternations of custody ordered by the trial court cannot be favorably compared to split-custody arrangements in other cases where a child spends several days per week with each parent or alternates custody after one or more weeks at each parent's residence. In those cases, which typically involve parents who live in the same community, there may be a greater possibility of continuity and the development by the child of stable scholastic, social, religious, and family routines and relationships, even though he or she may be forced to alternate between two residences. Instead, in the present case, the child will develop one set of routines and put down one set of roots in even numbered years; then, in odd numbered years, he will be moved to a different home and a different community and will be forced to develop different routines, to sever *Page 616 
existing bonds and develop new ones, and, in short, to put down a different set of "roots." Although alternating custody arrangements are not ipso facto improper, in this case we see nothing in the record that would support a conclusion that this young child will not be subjected to major, disruptive changes in his life every year in a manner contrary to the principles articulated in Ex parte McLendon.
Accordingly, we reverse the trial court's judgment insofar as it pertains to the custody of the minor child. We remand the cause for the entry of a judgment consistent with the principles discussed herein.
REVERSED AND REMANDED.
CRAWLEY, P.J., and THOMPSON and BRYAN, JJ., concur.
PITTMAN, J., concurs in the result, with writing.
[1] The wife also had another son from her prior marriage; that son was killed in an automobile accident in 2002. Except as otherwise indicated, references hereinafter to "the stepson" are intended to be references to the wife's surviving son from her prior marriage.
[2] The judgment of divorce also divided the parties' property and debts; ordered the noncustodial parent to pay child support; declined to award alimony; and declined to award attorney fees to either party. Those provisions are not at issue in this appeal.
[3] The wife also contends that the trial court abused its discretion in admitting into evidence photographs that had not been properly produced to the wife in discovery. We note, however, that the wife has not cited any authority requiring the exclusion of that evidence under the circumstances of this case.See Rule 28(a)(10), Ala. R.App. P.
[4] A similar presumption arises against the wife, but the husband did not appeal, and we therefore need not address the presumption against the wife's custody.
[5] We are not presented in this case with an argument that the trial court erred by deciding in advance, in a manner that required speculation as to future circumstances, that it will be in the child's best interest for his physical custody to be modified in the fall of 2005, some one and one-half years removed from the date the trial court entered its judgment, or on an annual basis thereafter. See Korn v. Korn, 867 So.2d 338
(Ala.Civ.App. 2003); Webber v. Webber, 854 So.2d 133, 137
(Ala.Civ.App. 2003); Long v. Long, 781 So.2d 225, 227
(Ala.Civ.App. 2000); Scacca v. Scacca, 694 So.2d 1
(Ala.Civ.App. 1997); and Hovater v. Hovater, 577 So.2d 461
(Ala.Civ.App. 1990).