939 So.2d 918 (2006)
Patricia LAMB
v.
Jonathan LAMB
2040487.
Court of Civil Appeals of Alabama.
January 20, 2006.
*919 Banks T. Smith of Hall, Smith, Prim & Freeman, P.A., Dothan, for appellant.
W. Terry Bullard, Dothan, for appellee.
*920 CRAWLEY, Presiding Judge.
On September 21, 2004, Jonathan Lamb ("the husband") sued Patricia Lamb ("the wife"), seeking a divorce, alleging as grounds for the divorce an incompatibility of temperament and an irretrievable breakdown of the marital relationship. Although the wife argued at the trial that she should have custody of the couple's child because the husband had been abusive toward the wife during the marriage, the trial court's judgment awarded custody to the husband. The wife appeals, alleging that the trial court erred in making its custody award and in awarding the marital home to the husband.
The couple married in August 2000 and had one child born to them during their marriage. The wife has four other children, for whom she receives child support, from previous relationships. The husband has a child from a previous relationship. The wife alleged at trial, and several witnesses testified, that the husband was abusive toward her during their marriage. The wife stated that she had had a nervous breakdown and had been confined to a hospital as a result of the husband's abuse. Although she never testified specifically what that abuse was or when it happened, several witnesses for the wife elaborated upon the alleged abuse when they testified.
A neighbor who lived across the street from the couple stated that he called the police more than 10 times to report "incidents." On one occasion the neighbor saw the husband slap one of the wife's children from a previous relationship to the ground. Another time the neighbor heard the couple yelling inside their home; then, when the couple went onto the porch, he saw the husband knock the wife down and almost off the porch. On yet another occasion the neighbor called the "animal control" when he saw the husband punch a puppy in the face. However, the neighbor also admitted that the husband appeared to be a good father to the couple's child and that because the fights had started inside the couple's house he could not refute testimony indicating that the wife had started the fights by throwing things at the husband.
Barbara Pruitt, a former girlfriend to the husband before he was married to the wife in this case, testified that when she was in a relationship with the husband he was abusive toward her and, at times, toward their child. Pruitt also stated that the husband lied to the Department of Human Resources after they had separated. Despite the husband's efforts to the contrary, Pruitt stated, she has sole custody of their child and the husband has no right to visitation. However, Pruitt admitted that the husband had never been convicted of any of the abuse she alleged.
The wife's mother also testified, stating that she had witnessed the husband abuse the wife and tie cats to a ceiling fan. However, the husband indicated that his wife's parents should not be trusted to tell the truth by testifying that his wife's parents called his employer and falsely claimed that he was using drugs.
Additionally, there was other evidence on which the trial court could have relied in awarding the child's custody to the husband, including allegations that the parties' child and the wife's other children were poorly cared for by the wife. Most of the wife's children were alleged to have trouble in school and to have missed many days because of head lice. When questioned by the husband's attorney about her children's school performance and attendance, the wife's answers to questions were often simply "I don't know" or "I don't recall." Also, the wife stated that she had been recently hospitalized for a nervous breakdown and had been locked up at night in the mental ward. The husband testified that one of the wife's children *921 went to school one day in clothes in which the child had urinated. Furthermore, the husband submitted pictures to the trial court of the home maintained by the wife, which the husband alleged was "messy."
The husband also stated that he wanted custody of the child because he wanted the child to have the best education, clean clothes, and no lice. Additionally, there was evidence indicating that the husband helped the child with her homework, using flash cards every night to learn the ABC's. Although the husband works, he testified that he picks up the child from after-school care and that he hired a neighbor to take the child to school in the morning. The husband denied all the allegations of abuse toward the wife and the children.
The husband testified that he has worked at "Pemco Aviation World Air" for five years and that he earns $2,500 a month in wages. Although the wife claimed, and her mother testified, that the wife had made payments on the couple's marital home from the child-support payments she had received for her other children, the husband claimed that he paid for the marital home completely on his own.
The trial court's judgment awarded custody of the couple's child to the husband and awarded the couple's marital home to the husband as well. The wife moved the trial court for a new trial or, in the alternative, to amend its judgment. The trial court subsequently entered an amended judgment, noting that although there was evidence of a "skirmish" between the parties and between the husband and one of the wife's children, there was no evidence indicating that the husband had ever been violent toward the parties' child. The trial court also observed that the husband has a stable job and cares for his child's hygiene and education. In contrast, the trial judge noted, the wife is not employed, has four other children to care for, and appears "to be careless in her requirements concerning education and personal hygiene." Ultimately, the trial court decided that it was in the best interests of the child to be placed with the husband.
"When evidence in a child custody case has been presented ore tenus to the trial court, that court's findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination  it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing. See Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), wherein this Court, quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala. Civ.App.1993), set out the well-established rule:
"`"Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, Payne v. Payne, 550 So.2d 440 (Ala. Civ.App.1989), and Vail v. Vail, 532 So.2d 639 (Ala.Civ.App.1988), and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow. Gamble v. Gamble, 562 So.2d 1343 (Ala.Civ.App.1990); Flowers v. Flowers, 479 So.2d 1257 (Ala.Civ.App. 1985)."'
"It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial *922 court made those findings necessary to support its judgment, unless such findings would be clearly erroneous. See the cases collected at 3 Ala. Digest 2d Appeal & Error § 846(5) (1993).
"There are two different standards for reviewing custody arrangements. If custody has not previously been determined, then the `best interest of the child' standard is appropriate. Ex parte Couch, 521 So.2d 987 (Ala.1988). . . .
". . . .
"Neither the Court of Civil Appeals nor this Court is allowed to reweigh the evidence in this case. This case, like all disputed custody cases, turns on the trial court's perception of the evidence. The trial court is in the better position to evaluate the credibility of the witnesses . . . and the trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody."
Ex parte Bryowsky, 676 So.2d 1322, 1324-26 (Ala.1996).
"Furthermore, an appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow." Ex parte Foley, 864 So.2d 1094, 1099 (Ala.2003) (citations omitted).
"`"In an action between parents seeking an initial award of custody, the parties stand on equal footing and no presumption inures to either parent. The trial court's overriding consideration is the children's best interests and welfare."'" Smith v. Smith, 727 So.2d 113, 114 (Ala.Civ.App.1998)(quoting Collier v. Collier, 698 So.2d 150, 151 (Ala.Civ.App.1997), quoting in turn Graham v. Graham, 640 So.2d 963, 964 (Ala.Civ.App.1994)).
However, as this court stated in Headrick v. Headrick, 916 So.2d 610, 613-614 (Ala.Civ.App.2005):
"An exception to the equal-footing principle concerns cases where domestic violence and abuse have occurred. In such cases, the Custody and Domestic or Family Abuse Act, Ala.Code 1975, § 30-3-130 et seq. ('the Act'), creates a rebuttable presumption against granting custody to a perpetrator of domestic violence or abuse. Section 30-3-131, Ala. Code 1975, provides:
"`In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of domestic or family violence. Notwithstanding the provisions regarding rebuttable presumption, the judge must also take into account what, if any, impact the domestic violence had on the child.'
"Section 30-3-133, Ala.Code 1975, creates a similar rebuttable presumption that a minor child should reside with the parent who is not the perpetrator of domestic violence.
"In Ex parte Fann, our Supreme Court held that the Act does not require a trial court to make a specific finding as to whether domestic violence has in fact occurred and that it does not require the trial court to state the reasons and findings supporting a conclusion that a parent has rebutted a presumption against custody. Ex parte Fann, 810 So.2d [631] at 638-39 [(Ala.2001)]. See also Fell v. Fell, 869 So.2d [486] at 494 [(Ala.Civ.App.2003)]."
*923 In this case, the trial court received ore tenus testimony; therefore, this court must presume that the trial court's judgment is correct, and we will not reverse that judgment unless it is shown to be plainly and palpably wrong. Ex parte Bryowsky, 676 So.2d at 1324 (citations omitted). In this case, although there was some evidence of domestic abuse, there was also evidence indicating that the wife recently had a nervous breakdown requiring her to be hospitalized and that she did not properly maintain the hygiene of the couple's child or of her children from previous relationships. When questioned about whether her children missed school because they had head lice, the wife could only answer "I don't know." Additionally, there was evidence indicating that the husband has a steady job, that he has never been abusive toward the child, and that he is concerned for the child's hygiene and education. Considering that the judgment refers to the conflicts the husband and the wife had as a "skirmish," it appears that the trial judge did not believe that the alleged abuse, if it actually occurred at all, rose to the level of abuse necessary to invoke the provisions of the Custody and Domestic or Family Abuse Act, Ala.Code 1975, § 30-3-130 et seq. Consequently, the rebuttable presumption that an abusive parent should not be granted custody of his or her child would not apply. Alternatively, because the trial judge characterized the alleged abuse as a "skirmish," it also appears that the rebuttable presumption that the husband is unfit to have custody of the parties' child pursuant to § 30-3-130 et seq. could have been overcome by the other evidence presented at trial. Consequently, we affirm the portion of the trial court's judgment awarding custody of the couple's child to the husband.
Concerning the portion of the trial court's judgment awarding the marital home to the husband, we note that the ore tenus presumption that the trial court's judgment is correct applies. Hall v. Hall, 895 So.2d 299, 303 (Ala.Civ.App.2004). As our supreme court held in Ex parte Elliott, 782 So.2d 308, 311-12 (Ala.2000):
"A court has no fixed standard to follow in awarding alimony or in dividing marital property. Rather, the award or division need only be equitable and be supported by the particular facts of the case. . . . `[T]he [circuit] court should consider several factors, including the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source, value, and type of property owned, and the standard of living to which the parties have become accustomed during the marriage.'"
(Quoting Nowell v. Nowell, 474 So.2d 1128, 1129 (Ala.Civ.App.1985); footnote omitted.)
Additionally, "[t]he only limitation on a trial court's broad discretion in dividing the marital estate is that the property division and alimony award must be equitable under the circumstances of the particular case; the task of determining what is equitable falls to the trial court." Hall v. Hall, 895 So.2d at 303 (citing Cantrell v. Cantrell, 773 So.2d 487 (Ala.Civ.App. 2000)).
In this case, in which the husband and the wife disputed who paid for the marital home and in which the husband claimed that he paid for the marital home entirely on his own, the trial court was free to believe the evidence presented by the husband in making its judgment awarding the marital home to the husband. Additionally, the trial court could have also considered that, by awarding the custody of the couple's child to the husband, that the court should ensure that the husband would have an adequate residence in which *924 to live and care for the child. Considering the evidence presented to the trial court supporting the trial court's judgment, and the ore tenus presumption, we cannot say that the trial court's award of the marital home to the husband was inequitable. Therefore, we affirm the judgment of the trial court.
AFFIRMED.
THOMPSON, PITTMAN, and BRYAN, JJ., concur specially, with writings.
MURDOCK, J., concurs in the result, without writing.
THOMPSON, Judge, concurring specially.
I write specially to note that the evidence presented to the trial court in this case exemplifies the need to revisit the rationale behind this court's holding in Fesmire v. Fesmire, 738 So.2d 1284 (Ala. Civ.App.1999). In Fesmire, both the mother and the father made allegations of domestic abuse against the other. The trial court, without making express findings regarding the allegations of abuse, awarded custody of the child to the father. The mother appealed to this court, arguing that the trial court had erred by failing to apply provisions of the Custody and Domestic or Family Abuse Act, § 30-3-130 et seq., Ala.Code 1975 ("the Act"). The Act provides:
"In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is detrimental to the child and not in the best interest of the child to be placed in the sole custody, joint legal custody, or joint physical custody with the perpetrator of domestic or family violence. Notwithstanding the provisions regarding rebuttable presumption, the judge must also take into account what, if any, impact the domestic violence had on the child."
§ 30-3-131, Ala.Code 1975.
In a proceeding in which custody is at issue and in which the trial court has made a finding of domestic or family violence, the trial court must consider "[t]he safety and well-being of the child and of the parent who is the victim of family or domestic violence" and "[t]he perpetrator's history of causing physical harm, bodily injury, assault, or causing reasonable fear of physical harm, bodily injury, or assault, to another person." § 30-3-132(a)(1) and (2), Ala.Code 1975. Domestic abuse is defined in the Act as "an incident resulting in the abuse, stalking, assault, harassment, or the attempt or threats thereof." § 30-3-130, Ala.Code 1975. The Act applies "[i]n every proceeding where there is at issue a dispute as to the custody of a child." § 30-3-131, Ala.Code 1975.
This court in Fesmire determined that, although the Act does not mandate that the trial court make findings regarding the allegations of abuse, in the absence of express findings by the trial court concerning those allegations, an appellate court will be unable to ascertain whether the trial court applied the Custody and Domestic or Family Abuse Act. 738 So.2d at 1285-86. As a result, the court, recognizing the heavy burden placed on the trial courts of this state to guard and protect the interests of children and the necessity to exercise "scrupulous care" in so doing, held that,
"in cases involving allegations of domestic or family abuse, the trial court must, on the basis of the evidence presented, make a finding on the record as to whether domestic abuse occurred and then, if necessary, it must apply the *925 remaining provisions of the Custody and Domestic or Family Abuse Act."
Fesmire, 738 So.2d at 1288.
The evidence presented to the trial court in the present case indicates that the husband has committed acts of domestic violence. Three witnesses testified on behalf of the wife that they had witnessed the husband's violent behavior. A neighbor testified that he witnessed the husband knock the wife onto the ground, slap one of the wife's children, and punch a puppy in the face. The husband's former girlfriend testified that the husband had physically abused her on numerous occasions and had struck their child, who was then six months old, in the mouth. Finally, the wife's mother testified that she had witnessed the husband physically abuse the wife many times and commit acts of animal cruelty. The judgment of the trial court, which awarded custody of the parties' child to the husband, merely noted evidence of a "skirmish" between the parties. Given the evidence presented at trial and the trial court's judgment, it is difficult to ascertain whether the trial court believed that the alleged abuse had occurred or whether or not the trial court considered the alleged abuse when deciding the custody issue.
The need to guard and protect a child's interests against perpetrators of domestic abuse has not changed since the enactment of the Act. Each year, in the United States, an estimated 3.3 million children are exposed to violence by family members against their mothers and female caretakers. American Psychological Ass'n, Violence and the Family: Report of the American Psychological Association Presidential Task Force on Violence and Family 11 (1996). Children who live with domestic violence face increased risks that include exposure to traumatic events, neglect, direct abuse, and the loss of one or both parents. National Adoption Information Clearinghouse, Children and Domestic Violence: A Bulletin for Professionals.[1] The risks associated with exposure to domestic violence may affect a child's well-being, safety, and stability. Id. In homes where domestic violence occurs, children are 15 times more likely to be abused. Domestic Violence Statistics  Children and Teens.[2]
The growing number of incidents of domestic violence and the potential effect that those incidents have on children require aggressive action on the part of the judiciary in this State. In order to guarantee the exercise of "scrupulous care" by our trial courts, it is necessary to ensure compliance with the Act. While I recognize that Fesmire was overruled by our supreme court in Ex parte Fann, 810 So.2d 631 (Ala.2001), and that this court is bound by that precedent, I invite our supreme court to reconsider its holding in Fann and require express findings by the trial courts in cases in which allegations of domestic abuse are made. In my opinion, this is the only way to accomplish meaningful appellate review of decisions regarding domestic-abuse allegations and to assure that the Act is being applied in all cases.
PITTMAN, Judge, concurring specially.
I disagree with the proposition, advanced in one of the special writings in this case, that the Alabama Supreme Court should revisit Ex parte Fann, 810 So.2d *926 631 (Ala.2001), in this case in that the appellant has not argued in her brief that Fann was wrongly decided. Moreover, I am not convinced that the Supreme Court's primary holding in Fann  that the express terms of the Custody and Domestic or Family Abuse Act, § 30-3-130 et seq., Ala.Code 1975 ("the CDFAA"), as enacted by the Legislature in 1995 do not include a statutory requirement that trial courts make specific factual findings concerning abuse allegations  is unsound.
If the Legislature wishes to amend the CDFAA so as to mandate express findings of abuse in custody cases (and Judge Thompson's special writing offers sound reasons for undertaking such a course of action), that body has the power to do so.[3] Barring such action, however, it is not the province of the judiciary to improve upon the CDFAA. See Ex parte Brookwood Med. Ctr., Inc., 895 So.2d 1000, 1006 (Ala. Civ.App.2004).
BRYAN, Judge, concurring specially.
As Judge Thompson points out in his special writing, an appellate court cannot determine whether the trial court has complied with the Custody and Domestic or Family Abuse Act, § 30-3-130 et seq., Ala. Code 1975 ("the CDFAA"), when the evidence tends to prove that one or both parties to a custody dispute have committed acts of domestic violence and the trial court has made no express findings regarding that evidence. Like Judge Pittman, I am not convinced the supreme court's holding in Ex parte Fann, 810 So.2d 631 (Ala.2001)  that the CDFAA does not expressly require the trial courts to make express findings regarding evidence of domestic violence  is unsound. Nonetheless, the need for such findings exists. In his special writing, Judge Pittman has pointed out that the Legislature could address this problem by amending the CDFAA or Rule 52, Ala. R. Civ. P. I write to point out that, pursuant to Article IV, § 150, of the Alabama Constitution of 1901, the supreme court is also authorized to make the necessary change to Rule 52.
NOTES
[1] On January 20, 2006, the date this opinion was released, this statistic could be found at: http://nccanch.acf.hhs.gov/pubs/factsheets/ domesticviolence.cfm (a copy of which is available in the case file of the clerk of the Court of Civil Appeals).
[2] On January 20, 2006, the date this opinion was released, this statistic could be found at: http://womensissues.about.com/od/domestic violence/a/dvstats4.htm (a copy of which is available in the case file of the clerk of the Court of Civil Appeals).
[3] Alternatively, the Legislature might choose to exercise its authority under § 150 of the Alabama Constitution of 1901 to change Rule 52(a), Ala. R. Civ. P., which provides that "[i]n all actions tried upon the facts without a jury . . . the court may upon written request and shall when required by statute, find the facts specially and state separately its conclusions of law thereon" (emphasis added).